**VENTURE COAL SALES COMPANY, Sanner Energies, Inc., and Future Industries, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–5132.

United States Court of Appeals, Federal Circuit.

June 1, 2004.

Vincent J. Barbera, Barbera, Clapper, Beener, Rullo & Melvin, of Somerset, PA, argued for plaintiffs-appellants.

Richard T. Morrison, Deputy Assistant Attorney General, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Connor, Assistant Attorney General, and Thomas J. Clark, Attorney.

Before LOURIE, SCHALL, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Venture Coal Sales Company, Sanner Energies, Inc., and Future Industries, Inc. (collectively "Venture Coal") appeal from the decision of the United States Court of Federal Claims granting the government's motion to dismiss for lack of subject matter jurisdiction. *Venture Coal Sales Co. v. United States*, 57 Fed. Cl. 52 (2003). For the reasons set forth below, we affirm.

## BACKGROUND

The appellants are three Pennsylvania coal companies in the business of mining and selling coal, both domestically and through export. During the period beginning with the first quarter of 1988 and ending with the second quarter of 1995, the companies paid a tax on all the coal they produced, pursuant to the Coal Sales Act, 26 U.S.C. § 4121 (1994) ("Coal Sales Tax"). The tax was imposed both on coal sold domestically and on coal that was exported. Section 4221(a) of Title 26 of the United States Code lists certain sales as exempt from taxation under that chapter of the code, but specifically excludes the Coal Sales Tax from that exemption. *Id.* § 4221(a) ("[N]o tax shall be imposed under this chapter (*other than section 4121* ...) on the sale by the manufacturer ... of an article ... for export, ... but only if such exportation ... is to occur before any other use." (emphasis added)).

In September 1997, seven coal corporations, not including the appellants, filed a complaint in the United States District Court for the Eastern District of Virginia, seeking a refund of taxes on exported coal paid between January 1 and March 31 of that same year. In 1998, the district court held in that case that the Coal Sales Tax violated the Export Clause of the United States Constitution, art. I, § 9, cl. 5, and ordered a refund of the taxes to those coal corporations. *Ranger Fuel Corp. v. United States*, 33 F.Supp.2d 466 (E.D.Va. 1998).[1]

In October 2003, the appellants, who were not parties to the Virginia lawsuit, filed suit in the United States Court of Federal Claims seeking a refund of taxes paid on coal they exported from 1988 through 1995 pursuant to the Coal Sales Act. They alleged jurisdiction in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994). The government, however, argued that the plain-

---

1. The government acquiesced to the ruling in *Ranger Fuel* that the Coal Sales Tax was unconstitutional by issuing a notice to the public in the Cumulative Bulletin, Notice 2000–28, 2000–1 C.B. 1116 (May 22, 2000).

tiffs failed to bring their suit within the six-year statute of limitations period for Tucker Act claims, *id.* § 2501, as the taxes were paid more than seven years before the suit was initiated. Accordingly, the government moved to dismiss the suit for lack of subject matter jurisdiction, and the Court of Federal Claims granted the motion. The coal companies appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

 The Court of Federal Claims' dismissal of a case for lack of subject matter jurisdiction is a legal determination that we review de novo. *Frazer v. United States,* 288 F.3d 1347, 1351 (Fed.Cir.2002). Similarly, "[w]hether equitable principles can constitute a cognizable defense to the statute of limitations codified at [28 U.S.C.] § 2501 is a question of law" that we also review de novo. *Id.*

### I. *Accrual of Claims*

 On appeal, Venture Coal disputes the application of § 2501. It argues that its claims accrued only when the Eastern District of Virginia rendered its *Ranger Fuel* decision in 1998. Venture Coal alleges that only when the district court first held that the statute was unconstitutional and then awarded the plaintiffs in that case damages in the form of refunded taxes did a cause of action accrue. Venture Coal maintains that until that decision, events sufficient to support its own claim had not yet occurred and it had no cause of action. Thus, because it initiated its suit within six years of that decision, Venture Coal argues that its own case was timely filed and was not barred by the statute of limitations.

In support of its position, Venture Coal cites *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 31, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), for the proposition that the Due Process Clause of the Fourteenth Amendment provides for "meaningful backward-looking relief to rectify any unconstitutional deprivation." Venture Coal reasons that the Supreme Court in that case intended that there be an open-ended period for recovery of taxes paid in cases in which the tax is later found to be unconstitutional, but that the statute of limitations might otherwise bar recovery. Moreover, it argues that in *Swisher International, Inc. v. United States,* 205 F.3d 1358 (Fed.Cir. 2000), this court held that a claim for refund of an unconstitutional tax could be filed outside the applicable statute of limitations.

The government responds that a new claim accrued each time Venture Coal paid the Coal Sales Tax. It argues that Venture Coal, like the plaintiffs in *Ranger Fuel,* could have filed suit as soon as it paid the tax. The government asserts that the claims are time-barred because Venture Coal filed its suit after the six-year period permitted by 28 U.S.C. § 2501. With respect to *McKesson,* the government counters that the Supreme Court stated in that case that a lawsuit seeking the refund of an unconstitutional state tax should be governed by the appropriate state statute of limitations. Thus, it argues that enforcement of the six-year statute of limitations period here is consistent with *McKesson.* The government further asserts that *Hatter v. United States,* 203 F.3d 795 (Fed.Cir.2000) (en banc), *aff'd in part, rev'd in part,* 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001), supports its position that the recovery of taxes that were unconstitutionally imposed is limited to the six-year period preceding the filing of suit under Tucker Act jurisdiction.

We agree with the government that Venture Coal's claims are barred by the

statute of limitations.[2] Section 2501 of Title 28 of the United States Code provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." We have held that "a claim does not accrue until all events necessary to fix the liability of the defendant have occurred—when 'the plaintiff has a legal right to maintain his or her action.'" *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1570 (Fed.Cir.1993) (quoting Calvin W. Corman, *Limitation of Actions* § 6.1, at 374 (1991)). In *Catawba*, the Indian tribe argued, in an effort to avoid the same statute of limitations now contested, that the 1962 Termination Act relinquishing tribal ownership of certain South Carolina lands to that state's government did not become operative against the tribe until the Supreme Court ruled on its case. Thus, Catawba argued, there was no damage or injury to the tribe until that judicial interpretation of the statute was rendered, and its claim did not accrue until that decision was issued in 1986. We disagreed, stating that:

> While the Supreme Court's pronouncement in 1986 might be relevant to fixing the time when the Tribe *subjectively* first knew what the Act meant, it is fundamental jurisprudence that the Act's *objective* meaning and effect were fixed when the Act was adopted. Any later judicial pronouncements simply ex-

plain, but do not create, the operative effect.

*Id.* Accordingly, we held that the tribe's claim was barred by § 2501.

The same rule applies here. Each time that Venture Coal paid the Coal Sales Tax, the language of the statute and its possible unconstitutional nature were thus fixed, injury was inflicted, and a separate claim accrued when Venture Coal remitted each payment of the Coal Sales Tax. *See Hatter*, 203 F.3d at 797, 799–800 (holding that each time a tax is paid under an unconstitutional statute, a separate claim accrues under the continuing claim doctrine and the six-year period starts to run). Venture Coal thus was able to bring its claims as soon as the taxes were paid. The 1998 decision of the Eastern District of Virginia in *Ranger Fuel*—a "later judicial pronouncement" in *Catawba* parlance—holding that the tax was unconstitutional was not the action that damaged Venture Coal, and thus it cannot serve as the jurisdictional trigger for Venture Coal's Tucker Act claims.

We accordingly reject Venture Coal's argument that the district court's specific holding of unconstitutionality in *Ranger Fuel* started the running of the six-year statute of limitations period. Venture Coal relies on the notion that the district court's reasoning can be partitioned to yield separate determinations on constitutionality and damages. We find no merit in that artificial construction of the district court's opinion. Venture Coal's position

---

**2.** The trial court characterizes the ground of its decision as being a lack of subject matter jurisdiction, and it is true that we have stated that "the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act." *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed.Cir.2000). However, the Court of Federal Claims certainly has subject matter jurisdiction over claims for refund of taxes, and it had jurisdiction over this case to

determine when Venture Coal's claim accrued. The most precise ground for the trial court's decision here therefore would seem to be that Venture Coal failed to make its claim within the required limitations period—that is not a question of subject matter jurisdiction of the court. *See Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679 (Fed.Cir.1992) (discussing the distinction between lack of jurisdiction and the failure to state a claim); *see also Bray v. United States*, 785 F.2d 989, 992 (Fed.Cir. 1986).

would effectively remove the statute of limitations from nearly all similar lawsuits because any claim filed subsequent to a decision that a particular tax was unconstitutional would be entitled to recovery of all past taxes, regardless when the taxes were actually paid. Rather, the constitutionality challenge and the refund request are the same cause of action. The holding that the tax was unconstitutional was simply the confirmation of the correctness (at least as determined by one district court) of the legal theory behind the plaintiffs' claim for a refund; without the refund request, the plaintiffs arguably lacked standing because there would be no other injury asserted. Venture Coal was entitled to challenge the Coal Sales Tax when it paid the taxes as much as were the plaintiffs in *Ranger Fuel.*

Additionally, *McKesson* does not support Venture Coal's position. In that case, the Florida Supreme Court held that a specific state tax was unconstitutional. However, it refused to grant the petitioner *any* refund for taxes already paid because of the state's interest in fiscal stability. The United States Supreme Court reversed, emphasizing the state's responsibility to provide an avenue for *some* retrospective relief to taxpayers contesting the validity of a state tax. The Court held that "the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional." 496 U.S. at 22, 110 S.Ct. 2238. However, the Court stated that a state was free to "impose various procedural requirements on actions for postdeprivation relief," including the enforcement of "relatively short statutes of limitation." *Id.* at 44–45, 110 S.Ct. 2238. Such safeguards were stated to be necessary to balance the government's obligation to provide meaningful relief to aggrieved taxpayers with its own need for "sound fiscal planning." *Id.* at 44, 110 S.Ct. 2238. In the case before us, enforcement of the six-year limitations period serves as such an appropriate procedural requirement consistent with the *McKesson* holding.[3] Unlike the *McKesson* plaintiffs who were denied any opportunity for post-deprivation relief, Venture Coal had the chance to obtain such relief, but failed to comply with the statutory deadline. The six-year statutory period under the Tucker Act provides a meaningful lookback period during which plaintiffs may challenge taxes as unconstitutional, while at the same time it protects the government's financial planning.

Venture Coal's argument based on *Swisher* is likewise unpersuasive. Although that case relates to refunds of the unconstitutional Harbor Maintenance Tax, it focused primarily on protest procedures unique to the Court of International Trade and their impact on the court's jurisdiction. Contrary to the apparently open-ended customs regulations in *Swisher* relating to the time for filing refund requests, *see* 19 C.F.R. § 24.24(e)(5) (1999), Venture Coal's suit in the instant case is based on jurisdiction under the Tucker Act, which our precedent clearly states is subject to its statute of limitations. *See Brown Park Estates–*

---

**3.** Importantly, the Court assumed that the plaintiffs in *McKesson* were in "apparent compliance with the statutory requisites for preserving a claim" under applicable state laws and regulations. 496 U.S. at 24, 110 S.Ct. 2238. It noted that a postpayment refund action must be filed within the applicable limitations period in order to preserve the right to challenge a tax under Florida law. *Id.* at 24 n. 4, 110 S.Ct. 2238 (citing Fla. Stat. § 215.26(2) (1985) (generally applicable three-year limitations period for tax refund actions)). The Court acknowledged that upon remand, if compliance was not found, that fact could serve as an appropriate alternative ground for denying the refund. *Id.*

*Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1455 (Fed.Cir.1997).

Because the appellants filed their suit more than six years after the tax payments for which they now request a refund, the case is barred by 28 U.S.C. § 2501.

## II. *Tolling*

■ Alternatively, Venture Coal asserts that the statute of limitations should be tolled because it did not know nor could it have known in the exercise of reasonable diligence that its claims had accrued. The government responds that Venture Coal has not shown that its injury was inherently unknowable. Instead, the government urges that Venture Coal merely pleads ignorance of its legal rights, a defense that is not sufficient to invoke tolling. We agree with the government that Venture Coal is not entitled to tolling of the statute of limitations.

In *Japanese War Notes Claimants Ass'n of the Philippines, Inc. v. United States,* 178 Ct.Cl. 630, 373 F.2d 356 (1967), the Court of Claims commented that in order to toll the statute of limitations for filing a claim against the government,

> [a] [p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was "inherently unknowable" at the accrual date.... In [the latter] situation the statute will not begin to run until plaintiff learns or reasonably should have learned of his cause of action.

*Id.* at 359 (footnote omitted).

■ Venture Coal does not meet that test. Its argument that its injury was "inherently unknowable" until the issuance of the 1998 *Ranger Fuel* decision because acts of Congress are considered constitutional is flawed. It is correct that, as the

Court of Federal Claims has properly stated, that concept reflects "judicial restraint with respect to legislative branch actions," *Venture Coal Sales,* 57 Fed. Cl. at 54, and represents "[d]ue respect for the decisions of a coordinate branch of Government," *United States v. Morrison,* 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). However, reliance on that presumption does not support Venture Coal's tolling argument. That Venture Coal may have justifiably assumed that a statute enacted by Congress was presumptively constitutional does not change the precedential rule that a claim for damages from an invalid statute accrues on making a payment under the statute. *See Hatter,* 203 F.3d at 797–98. The government points out that Venture Coal knew that it paid the Coal Sales Tax on exported coal and that Venture Coal therefore should have known that it had been injured when it paid the tax. The Export Clause, of course, has been in existence for over two hundred years, and Venture Coal thus had all the facts necessary to initiate a claim against the United States. What it argues now is not that it lacked *sufficient facts* on which it could sue, but rather it did not know the *legal theory* on which its refund claim might succeed. That argument must fail; as our predecessor court has explained, "[i]gnorance of rights which should be known is not enough." *Jap. War Notes Claimants Ass'n,* 373 F.2d at 359.

## CONCLUSION

We have considered the appellants' remaining arguments and are not persuaded. For the aforementioned reasons, we conclude that appellants' claims are barred by the statute of limitations, and we accordingly affirm.

COSTS

No costs.

*AFFIRMED.*